IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | No. 24-374 |
| | : | |
| TYREE THOMAS | : | |

**MEMORANDUM**

**Judge Juan R. Sánchez**                                                                       **December 23, 2025**

Defendant Tyree Thomas is charged with possession of a firearm by a felon, arising from a July 2, 2024 traffic stop in Philadelphia. Thomas moves to suppress the firearm recovered during the stop and statements he made thereafter. Because the officers had reasonable suspicion to stop and frisk Thomas and because the firearm was in plain view, the motion will be denied.

**FINDINGS OF FACT[1]**

1. On July 2, 2024, at approximately 10:44 p.m., the PPD 911 dispatch system received a call from a complainant reporting that he was involved in a car accident near Broad and Vine Streets and the other driver struck him in the face with a gun. 911 Call, Gov't Ex. 1.

2. During the call, the complainant provided real-time updates about the assailant's location and direction of travel and described the assailant's vehicle as an orange Hyundai Accent hatchback. He also described the assailant as a Black male. *Id*.

---

[1] The following factual findings are based on the evidence presented at the suppression hearing on September 25, 2025, including: (1) testimony from Philadelphia Police Department (PPD) Sergeant Victoria Ayres; (2) body-worn camera footage; audio recording of 911 dispatch call and PPD radio transmissions related to the stop; and (4) PPD paperwork related to the stop and arrest.

3. At approximately 10:48 p.m., dispatch relayed over police radio that a Black male with a gun in an orange Hyundai Accent had assaulted another male near Broad and Spring Garden Streets and was last seen heading northbound on Broad Street. Police Radio, Gov't Ex. 2; N.T. 9/25/25, 26:20-32:18, Dkt. No. 43.

4. Sergeant Ayres and Officer Pouncey were on patrol in full uniform in a marked police vehicle around 12th and Wallace Streets when they received the radio call. Within minutes of the call, Sergeant Ayres observed an orange Hyundai Accent consistent with the dispatch description around Broad and Mount Vernon Streets. Sergeant Ayres observed a Black male in the front passenger seat. N.T. 9/25/25, 32:19-34:11, 44:7-18.

5. The officers followed the orange Hyundai Accent as it traveled northbound on Broad Street. As the officers got closer, the Hyundai increased in speed and made a sharp right turn onto Ridge Avenue without signaling. The officers initiated their lights and sirens on Wallace Street. The Hyundai pulled over near the 1200 block of Wallace Street. N.T. 9/25/25, 44:19-45:21.

6. Sergeant Ayres approached the passenger side while Officer Pouncey approached the driver. As Sergeant Ayres approached, she observed the front passenger (Defendant Thomas) lean forward and dip his head and upper body out of view as if reaching toward his feet or under the seat. Based on her training and experience, and given the report of a firearm, Sergeant Ayres believed the movement was consistent with concealing or retrieving an object and became concerned for officer safety. N.T. 9/25/25, 61:17-64:18; Sergeant Ayres BWC, Gov't Ex. 7 at 00:00-02:03.

7. Sergeant Ayres observed that the Hyundai had damage consistent with a recent accident. Thomas and the driver confirmed being involved in a recent accident with

2

another male. N.T. 9/25/25, 73:5-74:9; Sergeant Ayres BWC, Gov't Ex. 7 at 02:25-03:00.

8. Sergeant Ayres decided to conduct a protective frisk while Thomas remained seated in the vehicle, based on her training and assessment that keeping Thomas seated reduced the risk he could flee, fight, or access a weapon. Sergeant Ayres asked Thomas to open his door and to remain seated. Thomas complied. When the door opened, Sergeant Ayres could see a metal object under the front passenger seat that appeared consistent with part of a firearm. N.T. 9/25/25, 64:19-66:3, 70:17-76:6; Sergeant Ayres BWC, Gov't Ex. 7 at 03:00-04:10.

9. Sergeant Ayres frisked Thomas's waistband while he remained seated. As she did so, and while using a flashlight, Sergeant Ayres and other responding officers observed the barrel of a firearm protruding from underneath the front passenger seat. On the body-worn camera recording, Sergeant Ayres responded "I know" when notified of the gun by other officers. N.T. 9/25/25, 70:17-76:6; Sergeant Ayres BWC, Gov't Ex. 7 at 03:00-04:10.

10. Thomas's foot was against the firearm. Sergeant Ayres asked Thomas to move his foot, but he did not comply. Sergeant Ayres then placed Thomas in handcuffs, moved his foot, and recovered the firearm from underneath the front passenger seat. Sergeant Ayres BWC, Gov't Ex. 7 at 03:00-04:10.

11. After the firearm was recovered and Thomas was handcuffed, Sergeant Ayres asked Thomas whether he had a permit to carry a firearm. Thomas said that he did not. Sergeant Ayres placed Thomas in the back of her patrol car. After his arrest, Thomas made several spontaneous statements about possessing the firearm and striking the

      complainant. Shortly thereafter, the complainant arrived on scene and identified Thomas as the assailant. N.T. 9/25/25, 77:22-80:02; Sergeant Ayres BWC, Gov't Ex. 7 at 04:00-21:10.

12. Sergeant Ayres's testimony was corroborated by body-worn camera footage, radio transmissions, and police paperwork. The Court finds her testimony credible in all material respects.

**LEGAL STANDARDS**

      The Fourth Amendment protects "against unreasonable searches and seizures." U.S. Const. amend. IV. Warrantless searches and seizures are presumptively unreasonable unless the Government demonstrates that a specifically established exception applies. *Arizona v. Gant*, 556 U.S. 332, 338 (2009). Police may "conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *United States v. Delfin-Colina*, 464 F.3d 392, 396 (3d Cir. 2006) (internal quotation marks and citations omitted). Reasonable suspicion means "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion." *Terry v. Ohio*, 392 U.S. 1, 21 (1968). This is "a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence," and it is evaluated under the totality of the circumstances. *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000); *Delfin-Colina*, 464 F.3d at 397. In evaluating reasonable suspicion, courts must consider the facts available to the officer at the time of the stop. *United States v. Brown*, 448 F.3d 239, 245 (3d Cir. 2006). Officers may rely on information relayed through police dispatch and other officers to conduct a stop under the collective knowledge doctrine. *See United States v. Whitfield*, 634 F.3d 741, 745-46 (3d Cir. 2010) (applying the collective knowledge doctrine to an investigatory stop).

During a lawful investigatory stop, an officer may conduct a protective frisk for weapons if the officer has reasonable suspicion that the person is armed and dangerous. *Terry*, 392 U.S. at 27. In the context of a vehicle stop, the officer may take reasonable measures to control the scene, including ordering occupants to remain in or exit the vehicle. *See Pennsylvania v. Mimms*, 434 U.S. 106, 110-11 (1977). An officer may also conduct a limited protective sweep of the passenger compartment for weapons where the suspect might gain immediate control of a weapon. *Michigan v. Long*, 463 U.S. 1032, 1049-52 (1983). And under the plain view doctrine, an officer may seize evidence without a warrant where the officer is lawfully present, the item is in plain view, and its incriminating nature is immediately apparent. *Horton v. California*, 496 U.S. 128, 136-37 (1990).

**DISCUSSION**

Thomas seeks suppression of the firearm and his statements as fruits of an unlawful stop and "search" of the vehicle. Def.'s Mot. Suppress 5, Dkt. No. 30. Under the totality of the circumstances, the officers had reasonable suspicion to stop the Hyundai, Sergeant Ayres had reasonable suspicion to conduct a limited protective frisk for weapons, and the firearm was observed in plain view from a lawful vantage point and seized lawfully.

First, the stop was supported by reasonable suspicion based on the information relayed through dispatch and the officers' own observations. The complainant described a contemporaneous assault with a gun and provided distinctive identifying information (an orange Hyundai Accent hatchback) together with information about the location and general direction-of-travel. Within minutes and in close proximity of the reported assault, Sergeant Ayres encountered a vehicle matching that distinctive description. Any imperfections in the radio description, including the absence of a detailed "flash" and the fact that the complainant did not describe all occupants, did not undermine reasonable suspicion given the vehicle's unique color, temporal

proximity, and corroboration. In addition, before initiating the stop, the officers observed the Hyundai speed and turn right onto Ridge Avenue without signaling, a traffic violation that provides an independent basis for the stop. *See* 75 Pa. Cons. Stat. § 3334; *Delfin-Colina*, 464 F.3d at 398 (holding "that a traffic stop" is reasonable . . . when an officer possessed specific, articulable facts that an individual was violating a traffic law at the time of the stop").

Second, Sergeant Ayres's limited protective frisk was justified by her reasonable belief that Thomas was armed and dangerous. The officers were responding to a report that the assailant had used a firearm to strike the complainant moments earlier. As Sergeant Ayres approached the passenger side, she observed Thomas lean forward and dip out of view as if reaching toward his feet or under the seat. Combined with the reported firearm, that movement reasonably suggested Thomas could be attempting to conceal or access a weapon. *See Wardlow*, 528 U.S. at 125 ("[T]he determination of reasonable suspicion must be based on commonsense judgments and inferences about human behavior."). Given the safety risks inherent in a firearm traffic stop, Sergeant Ayres was entitled to conduct a limited pat down of Thomas's waistband and to take reasonable steps to control Thomas's access to the passenger compartment.

Third, the firearm was lawfully seized. Sergeant Ayres asked Thomas to open the passenger door and remain seated while she conducted the protective frisk. When the door opened, she could see a metal object under the seat consistent with a firearm. While she conducted the limited waistband frisk, Sergeant Ayres and the backup officers could see the barrel of the firearm under the seat. Because the officers were lawfully positioned during a lawful investigative stop and frisk, and the firearm's incriminating nature was immediately apparent, the plain view doctrine justified the seizure. In any event, given the reasonable suspicion that a weapon was accessible in the passenger compartment, the firearm would have likely been discovered during a lawful protective

sweep. *Utah v. Strieff*, 579 U.S. 232, 238 (2016) (explaining that "the inevitable discovery doctrine allows for the admission of evidence that would have been discovered even without the [alleged] unconstitutional source").

Finally, because the stop and seizure were lawful, Thomas's statements are not fruits of Fourth Amendment violations. *See Strieff*, 579 U.S. at 237-38. The record further reflects that Thomas made several incriminating statements spontaneously after his arrest, rather than in response to custodial interrogation. *See Rhode Island v. Innis*, 446 U.S. 291, 300 (1980) ("It is clear therefore that the special procedural safeguards outlined in *Miranda* are required not where a suspect is simply taken into custody, but rather where a suspect in custody is subjected to interrogation."). Accordingly, Thomas's statements will not be suppressed.

**CONCLUSIONS OF LAW**

1. Sergeant Ayres and Officer Pouncey had reasonable suspicion to stop the orange Hyundai Accent based on the complainant's contemporaneous report relayed through police dispatch, corroboration of distinctive identifying details, and the officers' observation of a traffic violation.

2. Sergeant Ayres had reasonable suspicion to believe Thomas was armed and dangerous and was justified in conducting a limited protective frisk for weapons during the stop.

3. The firearm was observed in plain view from a lawful vantage point and was lawfully seized. In any event, it would have been inevitably discovered during a lawful protective sweep for weapons.

4. Thomas's statements are not suppressed as fruits of an unlawful stop or search.

Therefore, Thomas's motion to suppress is denied. An appropriate order follows.

BY THE COURT:


<u>/s/ Juan R. Sánchez</u>
Juan R. Sánchez, J.